UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

DEREK K.[1],

Plaintiff,

v.

ANDREW SAUL, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No.: 2:19-cv-01044-MK

OPINION AND ORDER

**KASUBHAI, Magistrate Judge:**

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Both parties consent to jurisdiction by a U.S. Magistrate Judge. ECF No. 8.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental parties.

For the reasons discussed below, the Court reverses and remands this case for the immediate calculation and award of benefits.

## BACKGROUND

Plaintiff protectively filed an application for Disability Insurance Benefits on June 2, 2015, with an alleged disability onset date of May 29, 2015. Tr. 15.  Plaintiff's claims were denied initially and upon reconsideration. Tr. 15.  Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  ALJ Jesse K. Shumway held a hearing on January 5, 2018 and a supplemental hearing on June 21, 2018. Tr. 33, 68.  The ALJ denied Plaintiff's application in a written decision dated July 17, 2018. Tr. 15-25.  Plaintiff sought review from the Appeals Council.  The Appeals Council denied review, rendering the ALJ's decision the final decision of the Commissioner. Tr. 1-4.  Plaintiff seeks judicial review of the Commissioner's decision.

## STANDARD OF REVIEW

A reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).  To determine whether substantial evidence exists, a court reviews the administrative record as a whole, "weighing both the evidence that supports and detracts from the ALJ's conclusion." *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## THE SEQUENTIAL ANALYSIS

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.  The initial burden of proof rests upon the claimant to meet the first four steps. *Id.*  If the claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the commissioner at step five. *Id.*; *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At step two, the Commissioner determines whether the claimant has one or more severe impairments that are expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii).  At step three, the Commissioner determines whether any of those impairments "meets or equals" one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)(ii).  The Commissioner then assesses the claimant's residual functional capacity ("RFC"). *Id.*  At step four, the Commissioner determines whether claimant's RFC allows for any past relevant work. *Id.*  At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.*  If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Id.*; *see also Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001).

## FINDINGS OF THE ALJ

Here, at step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 29, 2015. Tr. 17.  At step two, the ALJ found that Plaintiff had the following severe impairments: "lumbar degenerative disc disease; obesity; somatic symptom disorder; and depression." Tr. 17.  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of a listed impairment in the Listings. Tr. 18-20.

Prior to step four, the ALJ determined that Plaintiff retained an RFC that allowed him to perform sedentary work with the following limitations:

> [Plaintiff] cannot climb ladders, ropes, or scaffolds; he can only occasionally perform all other postural activities; he can have no exposure to hazards, such as unprotected heights and moving mechanical parts; he is limited to simple, routine tasks with a reasoning level of 2 or less; he can have only occasional contact with the public, coworkers, and supervisors; and he would need a sit/stand option at will.

Tr. 20.

At step four, the ALJ found that Plaintiff was incapable of performing past relevant work as a numerical control machine operator. Tr. 23-24.  At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform based on his age, education, work experience, and RFC. Tr. 24.  The ALJ found that Plaintiff would be able to perform occupations such as bench hand, table worker, and masker. Tr. 24. Finally, the ALJ concluded that from May 29, 2015 through the date of the decision, Plaintiff was not disabled within the meaning of the Act. Tr. 25.

## DISCUSSION

Plaintiff seeks review by this Court contending that the ALJ erred by (1) rejecting medical opinions, (2) declining to find that Plaintiff has the severe impairment of Lyme disease

at step two, (3) failing to consider Listing 14.09 at step three, (4) rejecting Plaintiff's subjective complaints, (5) failing to develop the record, and (6) failing to conduct an adequate analysis at step five. Pl.'s Br. 7-20, ECF No. 19.  The Commissioner objects. Def.'s Br., ECF No. 20.

**I. Medical Opinions**

Plaintiff challenges the ALJ's rejection of the opinions of (1) treating physician Dr. Martha Grout, M.D., (2) treating physician Dr. Justin Olswanger, D.O., and (3) medical expert Dr. Robert Smiley, M.D. Pl.'s Br. 9-15, ECF No. 19. Plaintiff contends that the ALJ erred in rejecting the medical opinions without providing specific and legitimate reasons supported by substantial evidence. *Id.* at 9-15.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r., Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).  "[W]here the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.*

Specific and legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray v. Commissioner*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews v. Shalala*, 53 F.3d 1035, 1042–43 (9th Cir. 1995).  An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than

ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis" for the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014); *see also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)). "[T]he opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or clinical findings considered by the treating physician).

A. Treating Physician, Dr. Grout, M.D.

In a Medical Report, Dr. Grout noted Plaintiff's condition: symptoms of chronic pain throughout Plaintiff's body and chronic fatigue, positive test result for Lyme disease and elevated inflammatory markers, diminished brain function resulting from narcotics, pain resulting from Lyme disease, and poor prognosis. Tr. 616-17. Dr. Grout opined that continuous work would cause Plaintiff's condition to deteriorate due to poor energy and poor mitochondrial

function. Tr. 617. Dr. Grout further opined that Plaintiff would miss four or more days of work per month because of extreme fatigue and chronic pain. Tr. 617. Dr. Grout indicated that Plaintiff is "Severely limited: Unable to lift at least 2 pounds or unable to stand and/or walk." Tr. 617. Dr. Grout also noted that Plaintiff's inability to function "[h]as led to [the] resign[ation of] his job[.]" Tr. 618.

Additionally, Dr. Grout provided a supplemental letter and described the nature of Lyme disease and complications of its diagnosis and treatment. Tr. 881. Dr. Grout referenced numerous medical journals discussing detailed findings about Lyme disease. Tr. 881-89. Dr. Grout opined that Plaintiff "remains incapacitated by the persistence of debilitating symptoms of pain, mental confusion, poor short-term memory" caused by "his debilitating Lyme disease." Tr. 881.

The ALJ gave little weight to Dr. Grout's opinion. Tr. 23. The ALJ reasoned that Dr. Grout's opinion in the Medical Report "is a checkbox form with little … explanation," noting that Dr. Grout relied on "a non-medically determinable impairment, Lyme disease." Tr. 23. The ALJ found that the treating relationship was relatively short with the record showing only three episodes of treatments, two via telephone and one in-person treatment. Tr. 23. The ALJ further found that Dr. Grout's objective findings were minimal and "comparatively unremarkable." Tr. 23.

The ALJ's finding that Dr. Grout's opinion lacks explanation is unfounded. In the Medical Report, Dr. Grout noted "See chart note for specifics" when describing Plaintiff's symptoms of chronic pain and chronic fatigue. Tr. 616. Dr. Grout again wrote "See chart notes" when describing the clinical findings of positive Lyme disease test and positive inflammatory markers. Tr. 616. Dr. Grout also offered detailed explanations of the complicated nature of

Lyme disease as well as Plaintiff's symptoms. Tr. 881-89.  This Court finds that Dr. Grout

explained and supported her opinion by referring to the chart notes, test results and medical

journals.

According to the record, Dr. Grout first treated Plaintiff over a telephone encounter on

December 22, 2014. Tr. 593.  Dr. Grout noted that Plaintiff "had positive IGeneX" and Dr.

David Korn diagnosed him with Lyme disease. Tr. 593.  After the diagnosis, Dr. Stephen Fry

treated Plaintiff with doxycycline. Tr. 593.  Despite a negative IGeneX test result after Dr. Fry's

treatment, Dr. Grout noted that Plaintiff "still has all the symptoms[,]" including pain, muscle

spasms, and poor memory. Tr. 593.  Dr. Grout next treated Plaintiff in the office on July 14,

2015 and noted that Plaintiff had "bad pain issues – muscle cramps, spasms, insomnia – jerks

when he sleeps – wakes up screaming and twitching." Tr. 594.  Dr. Grout's assessment reads:

"Clearly he never healed completely from the Lyme disease. … He is not able to afford the

testing." Tr. 598.  The third treatment by Dr. Grout was over the telephone on September 15,

2015. Tr. 825-26.  Dr. Grout noted that Plaintiff "[f]eels no different." Tr. 825.  Dr. Grout also

noted: "Blood work – low platelet count – 85 – [Plaintiff] says has been low for a long time –

perhaps from infection or heavy metals" and "CRP high 2.8 – marker for inflammation[.]" Tr.

825.  Dr. Grout assessed that Plaintiff "[m]ay very well have autoimmune disease precipitated by

Lyme disease." Tr. 826.

Consistent with Dr. Grout's chart notes, the record shows that Plaintiff was under Dr.

Korn's care between September 2009 and October 2011 and started care with Dr. Stephen Fry in

November 2011. Tr. 749-97, 798-823.  On February 16, 2010, Dr. Korn's assessment of Plaintiff

included "Fatigue/malaise" and "Probably Late Lyme." Tr. 789.  Plaintiff's IGeneX test was

positive. Tr. 739.  Dr. Korn thereafter diagnosed Plaintiff with "Lyme disease." Tr. 787-88.  Dr.

Korn consistently noted that Plaintiff expressed fatigue, malaise, and pain. Tr. 749-89.  Dr. Fry documented that "[Plaintiff's] main problem is pain. He suffers from fatigue, headache, night sweats, numbness in the hands. No tinnitus. Occasional sore throat. Insomnia, brain fog. … Global muscle cramping and pain and joint pain, primarily in the hands and back." Tr. 802; *see also* Tr. 798-801, 804.

Other physicians documented similar symptoms.  From May 2013 to June 2015, J. Carvel Jackson, D.O., treated Plaintiff for chronic Lyme disease and back pain. Tr. 498-592.  Dr. Jackson's chart notes on June 2, 2015 and June 30, 2015 show that Plaintiff's pain level was "6 out of 10" and the pain impaired his activities of daily living. Tr. 589, 591.  Dr. Armando Rodriguez, M.D., noted at a routine follow up visit on May 5, 2015:

> "[N]othing changed", [sic] and [Plaintiff] decided not to do his blood work because there is an outstanding bill at Sonora Quest. Only taking at this point pain medication through Dr. Carvel Jackson.
>
> Chronic fatigue, not sleeping right (can't fall asleep), then his legs spasm and wakes up due to cramping. [Plaintiff] [i]s having difficulties keeping a job due to being slow and missing work.

Tr. 413.  On June 18, 2015, Dr. Ty Tallman documented that Plaintiff "is in pain," with a pain level of 10/10 for his back, 9/10 for his neck, and 8/10 for his legs and feet. Tr. 472.

Between October 2015 and September 2017, Dr. Olswanger consistently documented that Plaintiff suffered from neck pain, back pain, myalgias, muscle weakness, joint pain and stiffness, memory impairment, sleep disturbance and insomnia, and fatigue. Tr.650-719.  Plaintiff's pain level generally stayed at 9/10 and 10/10 with medications. Tr. 650-94.  On February 2, 2017, Dr. Olswanger noted that Plaintiff's "[c]hronic pain is about the same and he continues to see the pain clinic regularly." Tr. 703; *see also*, Tr. 719.  Additionally, Dr. Olswanger's treatment notes

show that Plaintiff's MMSE (Mini-Mental State Exam) was 23/30 on October 14, 2015 and "recommend[ed] neuro-cognitive evaluation." Tr. 602.

While Dr. Grout only treated Plaintiff three times, her chart notes are consistent with and supported by Plaintiff's longitudinal record, which contradicts the ALJ's conclusion that Dr. Grout's objective findings were minimal and unremarkable.  The Ninth Circuit has found that where "[t]he ALJ's assessment of [a doctor's] methodology and interpretation was not supported by any medical evidence, [] he was not free to substitute his own lay opinion." *Pilgreen v. Berryhill*, 757 Fed. Appx. 618, 619 (9th Cir. 2019).  Here, the ALJ substituted Dr. Grout's opinion with his own opinion without substantial evidence.  The ALJ erred in rejecting Dr. Grout's opinion.

### B. Treating Physician, Dr. Olswanger, D.O.

In a Medical Report, Dr. Olswanger listed the diagnoses of chronic Lyme disease and lumbar degenerative disc disease. Tr. 730.  Dr. Olswanger noted that Plaintiff's symptoms are chronic diffuse pain, cramps, weakness, and neuropathy, and that medications caused Plaintiff fatigue and memory loss. Tr. 730.  Dr. Olswanger further noted that Plaintiff had to lie down for at least two hours during the day. Tr. 730.  In addition, Dr. Olswanger opined that Plaintiff's condition would deteriorate from a regular and continuous employment. Tr. 731.  Plaintiff would miss "4 or more days per month" if he attempted to work a 40-hour per week schedule. Tr. 731.  Dr. Olswanger opined that Plaintiff can perform sedentary work. Tr. 731.

The ALJ rejected Dr. Olswanger's opinion explaining:

Dr. Olswanger opined that the claimant would be limited to a sedentary residual functional capacity and could be expected to have four or more absences. This is a checkbox form with little explanation, and what little explanation is provided does not support the opinions. As an example, Dr. Oswanger opined that the claimant's absenteeism was because he could "only sit 45-60 minutes at a time + standing is limited" (Ex. 12F, p.2). Dr. Olswanger relied on a non-medically determinable

impairment, the claimant's alleged Lyme disease. His opinion is inconsistent with his own exams, which have been consistently unremarkable through the adjudicative period (see Exs. 5F; 11F).

Tr. 23.

Dr. Olswanger noted "see attached" when providing his opinion in the Medical Report form. Tr. 730. Dr. Olswanger's treatment notes are in the record. Additionally, as discussed above, the longitudinal records, including Dr. Olswanger's treatment notes, support Dr. Grout's opinion that Plaintiff is "incapacitated by the persistence of debilitating symptoms of pain, mental confusion, poor short-term memory" caused by "his debilitating Lyme disease." Tr. 881. Dr. Olswanger's opinion is consistent with Dr. Grout's opinion. For the same reasons explained above, the ALJ erred in rejecting Dr. Olswanger's opinion on the grounds that it lacks explanation and support from the medical record.

In addition, the ALJ found that "[Dr. Olswanger's] opinion is also inconsistent with the remaining medical record and with the opinion of Dr. Jahnke[,]" a medical expert who reviewed the record and testified at the supplemental hearing. Tr. 23, 71-81. The ALJ stated: "I find Dr. Jahnke's opinion to be the most persuasive medical opinion in the file." Tr. 22. The ALJ explained: "[Dr. Jahnke] reviewed the entire longitudinal medical record, gave a persuasive and competent explanation of her opinion, and has program knowledge." Tr. 22.

The ALJ scheduled a supplemental hearing to "get additional expert input on [Plaintiff's conditions caused by Lyme disease.]" Tr. 69. An expert for Lyme disease would be an infectious disease specialist. Tr. 45. At the supplemental hearing, the ALJ explained that he could not find an infectious disease specialist to testify, but Dr. Jahnke was available. Tr. 69-70. Dr. Jahnke has a board certification in Internal Medicine. Tr. 879. Dr. Jahnke has held positions as an oncologist in the past but has no experience in infectious disease. Tr. 879. While Dr.

Jahnke is not an infectious disease specialist, she testified that Plaintiff did not have Lyme

disease through the adjudicative period and was not treated for Lyme disease. Tr. 22, 80-81.

    Dr. Jahnke started her testimony about Lyme disease by saying "First, I don't believe

there is any evidence of chronic Lyme disease. I don't question it or really believe it exists." Tr.

73. Dr. Jahnke testified that Plaintiff "had one positive test for IGG [antibody] which may

represent old exposure, but there is no evidence of ongoing Lyme disease" because Plaintiff's

later serum assessment and PSA test were negative. Tr. 75. While acknowledging that some

patients can get re-infected with Lyme disease, Dr. Jahnke testified that "we wouldn't believe an

ongoing infection at all." Tr. 75. For patients who did not receive adequate initial treatment, Dr.

Jahnke explained: "their symptoms might persist and then hopefully they get treated, and that

would take care of it. Sometimes the symptoms linger if there's been a delay in treatment but …

it should be treated again and can be eradicated." Tr. 76. Dr. Jahnke further testified that, to

show reinfection, "you'd need a positive test" and "you'd have to have specific symptoms, like

typically … this funny, red circular rash." Tr. 76. Dr. Jahnke confirmed that because Plaintiff's

doctors did not start a new treatment regime, it means that "they didn't read it as positive for new

Lyme disease." Tr. 78.

    The ALJ found Dr. Jahnke's opinion persuasive, stating "[i]f the claimant's doctors

thought he had Lyme disease, they did not comply with the standard of care for treating it." Tr.

18. In response to Plaintiff's challenge, the Commissioner contends that Dr. Jahnke has

reviewed the entire medical record through the date of hearing, including testing and evidence

not considered by Dr. Olswanger. Def.'s Br. 9-10, ECF No. 20. Thus, the Commissioner argues

that Dr. Jahnke's opinion constitutes substantial evidence for the ALJ to reject Dr. Olswanger's

opinion. *Id.* Plaintiff disputes that Dr. Jahnke's review and interpretation of the record

constitutes "independent clinical findings." Pl.'s Reply 5, ECF No. 21.  Rather, Plaintiff argues

that Dr. Jahnke "prejudged the case, did not adequately review the record, and does not possess

adequate knowledge to evaluate the issues." Pl.'s Br. 14, ECF No. 19.

"Opinions of a nonexamining, testifying medical advisor may serve as substantial

evidence when they are supported by other evidence in the record and are consistent with it."

*Morgan*, 169 F.3d at 600.  While Dr. Jahnke's opinion is supported by the test results in the

record, it is not consistent with the clinical findings in the longitudinal record from the treating

physicians as discussed above.  Thus, the opinion of Dr. Jahnke as a non-treating and

nonexaming physician cannot be substantial evidence to reject Dr. Grout's and Dr. Olswanger's

opinions. *See id.*

In sum, the ALJ failed to provide adequate reasons for rejecting Dr. Olswanger's opinion.

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a

treating or examining physician, [the Ninth Circuit] credits that opinion 'as a matter of law.'"

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  Because the ALJ erred in rejecting the opinions

of treating physicians Dr. Grout and Dr. Olswanger, this Court credits Dr. Grout's and Dr.

Olswanger's opinions as a matter of law. -

### C. Medical Expert, Robert Smiley, M.D.

Dr. Smiley testified at the first hearing as an impartial medical expert. Tr. 22, 35-46.  Dr.

Smiley confirmed that the symptoms of pain, fatigue, joint pain, and stiffness correlate with the

diagnosis of chronic Lyme disease. Tr. 42.  Dr. Smiley testified that there is a lack of good

connection between treatment and symptoms for chronic Lyme disease. Tr. 44.  Noting that

Plaintiff has a long history of pain and dysfunction in the record, Dr. Smiley testified: "I'm pretty

much forced to say … that he can't function even at the sedentary level." Tr. 40.  Dr. Smiley

opined: "I think that the treating doctor was right that [Plaintiff] can't sustain work at any level."
Tr. 41.

Dr. Smiley's opinion aligns with those of Dr. Grout and Dr. Olswanger. Because the
Court has found that the ALJ erred in rejecting Dr. Grout's and Dr. Olswanger's opinions and
has credited their opinions as a matter of law, the ALJ's rejection of Dr. Smiley's opinion is
error.

## II. Subjective Complaints

When a claimant has medically documented impairments that could reasonably be
expected to produce some degree of the symptoms complained of, and the record contains no
affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the
severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so."
*Smolen*, 80 F.3d at 1281 (internal citation omitted). A general assertion that the claimant is not
credible is insufficient. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Instead, the ALJ
must "state which … testimony is not credible and what evidence suggests the complaints are not
credible." *Id.* The reasons proffered must be "sufficiently specific to permit the reviewing court
to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v.
Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding
regarding the claimant's subjective symptom testimony is "supported by substantial evidence in
the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947,
959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p[2] provides that "subjective symptom evaluation is
not an examination of an individual's character," and requires the ALJ to consider all of the

---

[2] Effective March 28, 2016, SSR 16-3p supersedes and replaces SSR 96-7p, which governed the assessment of
claimant's "credibility." *See* SSR 16-3p, *available at* 2016 WL 1119029.

evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029 at *1-2.  The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Tr. 21.  However, the ALJ rejected Plaintiff's subjective complaints about the intensity, persistence, and limiting effects of his symptoms because they are not entirely consistent with the record. Tr. 21.  The ALJ explained that the objective medical evidence of Plaintiff's physical condition is unremarkable. Tr. 21.  This Court has found above that Plaintiff's longitudinal record supports both Dr. Grout's and Dr. Olswanger's opinions of Plaintiff's debilitating condition.  As a result, the ALJ's reasoning is not a clear and convincing reason to reject Plaintiff's subjective complaints about his physical condition.

As to Plaintiff's mental condition, the ALJ found that "mental status exams through the adjudicative period have generally been unremarkable." Tr. 21.  The ALJ added: "I am struck by the fact that the claimant has not pursued mental health treatment. It appears, based on the record, that this is what the claimant needs most, given that his pain complaints are not explained by any physical pathology." Tr. 21.

As noted by the ALJ, Plaintiff "has consistently been diagnosed with depression and anxiety." Tr. 21; *see e.g.*, Tr. 609, 629, 695, 699, 701, 703, 705, 709, 711, 713, 715.  The ALJ further noted that "[Plaintiff] has also reported to at least one examiner a long-term pain

syndrome that pre-dates his Lyme diagnosis …, again suggesting a long-standing psychological issue." Tr. 21.  The Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299–300 (9th Cir. 1999) (citing *Nguyen v. Chater,* 100 F.3d 1462, 1465 (9th Cir.1996)) (additional citation and internal quotation marks omitted).  Here, the ALJ found that Plaintiff suffers from mental illness and yet rejected Plaintiff's subjective complaints because of lack of treatment.  The ALJ's reason for the rejection does not follow the law.

Moreover, Plaintiff's physicians documented multiple times that Plaintiff's insurance denied claims, refused testing, and failed to cover appointments with specialists. Tr. 57-58, 472, 697, 701, 881.  A claimant's failure to receive medical treatment while she had no medical insurance cannot support an adverse credibility finding. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

For the above reasons, the ALJ erred in rejecting Plaintiff's subjective complaints.

Both Dr. Grout and Dr. Olswanger opined that Plaintiff would miss four or more days of work per month. Tr. 617, 731.  Plaintiff testified that he typically has "one to two bad days a week" and he does nothing on his bad days. Tr. 57-59.  At the hearing, the vocational expert testified that absenteeism of more than one day per month would preclude competitive employment. Tr. 63.  The vocational expert's testimony supports the finding that Plaintiff is disabled.

"[W]here the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, 'we will not remand solely to

allow the ALJ to make specific findings regarding that testimony.'  Rather, that testimony is …

credited as a matter of law." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  Plaintiff would be

disabled if his subjective complaints were credited.  The Court therefore credits Plaintiff's

subjective complaints.

### III. Severe Impairment at Step Two

An impairment is not severe in a social security disability benefits case if it amounts to

only a slight abnormality that would not significantly limit a claimant's physical or mental ability

to do basic work activities. 20 C.F.R. § 404.1521.  In other words, if the impairment would have

no more than a minimal effect on a claimant's ability to work, it does not satisfy the

requirements of step two of the sequential analysis. *Id.*

The ALJ declined to find that Plaintiff had the severe impairment of Lyme disease at step

two, stating that Plaintiff "does not currently have Lyme disease." Tr. 18.  The ALJ noted that

"testing in 2013 was equivocal at best" and Plaintiff "has not undergone any recent testing

despite recommendation that he do so." Tr. 18.  The ALJ reasoned: "If the claimant's doctors

thought he had Lyme disease, they did not comply with the standard of care for treating it." Tr.

18.

The ALJ heavily relied on Dr. Jahnke's opinion in dismissing Lyme disease at step two.

Tr. 18.  As discussed above, Dr. Jahnke's opinion does not constitute substantial evidence for the

ALJ to reject treating physicians Dr. Grout's and Dr. Olswanger's opinions.  As to Plaintiff's

lack of testing and treatment for Lyme disease, the record shows that Plaintiff could not afford

testing and treatment because of poor insurance coverage: Plaintiff's insurance denied claims,

refused testing, and failed to cover appointments with specialists. Tr. 57-58, 472, 697, 701, 881.

Dr. Grout explained Plaintiff's insurance challenge:

> Unfortunately, most insurance companies do not pay for treatment of persistent or chronic Lyme disease, often denying that such a disease entity even exists. [Plaintiff] has not been able to afford any further testing or any continued treatment of his debilitating Lyme disease, and remains incapacitated by the persistence of debilitating symptoms of pain, mental confusion, poor short-term memory.

Tr. 881.

The Commissioner contends that the ALJ correctly determined that Plaintiff failed to meet his burden of showing that Lyme disease is a severe impairment. Def.'s Br. 11, ECF No. 20. That said, the Commissioner argues that since the ALJ found in Plaintiff's favor at step two, it is irrelevant whether the ALJ found Lyme disease severe or non-severe, because the omission of Lyme disease at step two is inconsequential as long as the ALJ considers the limitations of Lyme disease in the RFC analysis. *Id.* at 12.

"Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (internal citation omitted). Because an ALJ must consider limitations and restrictions imposed by all of a claimant's impairments, even those that are not severe, "[t]he RFC therefore *should* be exactly the same regardless of whether certain impairments are considered severe or not." *Id.* at 1049 (emphasis in original). Thus, the issue here is whether the ALJ properly considered Plaintiff's Lyme disease when determining the RFC.

An ALJ has the responsibility to determine a claimant's RFC. 20 C.F.R. § 416.946(c). The RFC is used at step four of the sequential analysis to determine if a claimant is able to perform past relevant work, and at step five to determine if a claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(a). The RFC reflects the most an individual can do. 20 C.F.R. § 416.945. Limitations supported by substantial

evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert ("VE"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001).  The Court should uphold step four and five determinations "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

As found above, the ALJ erred in discrediting Plaintiff's pain complaints about his Lyme disease.  The ALJ then formulated the RFC without incorporating the limitations caused by Lyme disease, including Plaintiff's inability to do anything on his "bad days" which typically occur once or twice each week. Tr. 21-23.  The Court therefore finds that the ALJ's failure to incorporate the limitations caused by Lyme disease is not harmless.

## IV. Remand for an Immediate Award of Benefits

"The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it." *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017) (citation omitted). Plaintiff contends that the ALJ failed to develop the record by failing to call an infectious disease specialist. Pl.'s Br. 19-20, ECF No. 19.  Instead, the ALJ called an internal medicine specialist, Dr. Jahnke, to testify. *Id.*  As an alternative to a remand for an immediate award of benefits, Plaintiff requests a remand to obtain testimony from a medical specialist in infectious disease. *Id.* at 20.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000).  The issue turns on the utility of further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has

been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)).  The Court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits should be directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*  The "credit-as-true" doctrine leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 2003)).  The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the first prong of the credit-as-true analysis is met because the ALJ failed to provide legally sufficient reasons for rejecting the medical opinions of Plaintiff's treating physicians and Plaintiff's subjective testimony.  As to the second prong, the vocational expert's testimony makes it clear that Plaintiff's limitations preclude him from engaging in competitive employment.  Thus, there are no outstanding issues that must be resolved before a determination of disability can be made.  The second prong of the credit-as-true doctrine is satisfied.  It is also clear from the record that the ALJ would be required to find Plaintiff disabled, satisfying the third prong.  A remand for an immediate award of benefits is appropriate.  The Court does not reach the remaining two issues raised by Plaintiff.

**CONCLUSION**

For the reasons set forth above, the Court remands this case for the immediate calculation and award of benefits.

DATED this <u>13th</u> day of July 2020.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI
United States Magistrate Judge